IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KESIA J. PERRY, VALENCIA AARON,     )
and STACY D. TAYLOR,                )
                                    )
            Plaintiffs,             )
v.                                  )
                                    )
ALABAMA BEVERAGE CONTROL            )        Case No. 2:11cv464-WHA
BOARD, (STATE OF ALABAMA), CHIEF    )                (WO)
JEFF ROGERS, in his individual capacity, )
LT. KENNETH DAVIS, in his individual )
capacity, JEAN TURNER, in her individual )
capacity,                           )
                                    )
            Defendants.             )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on a Motion to Dismiss (Doc. #18), filed by Defendants

Alabama Beverage Control Board, Jeff Rogers, Stan Goolsby, Kenneth Davis, and Jean Turner.

Kesia J. Perry filed a Complaint in this case on June 14, 2011, bringing claims against the

Alabama Beverage Control Board, and against Chief Jeff Rogers and Stan Goolsby in their

individual capacities. She amended the Complaint, adding Valencia Aaron as a plaintiff and Lt.

Kenneth Davis, in his individual capacity, as a defendant. A Second Amended Complaint was

then filed, adding Stacy D. Taylor as a plaintiff and Jean Turner, in her individual capacity, as a

defendant. The Plaintiffs bring the following claims: Kesia Perry–Title VII race discrimination

and hostile environment against the ABC Board (Count I); Kesia Perry–retaliation against the

ABC Board (Count II); Kesia Perry– 42 U.S.C. § 1983 equal protection and 42 U.S.C. § 1981,

asserted under § 1983, claims against Jeff Rogers and Stan Goolsby for race discrimination and

racial harassment (Count III); Kesia Perry– § 1981, under § 1983, retaliation claim against Jeff

Rogers, Mark Hatfield,[1] and Stan Goolsby (Count IV); Valencia Aaron–Title VII race

discrimination and hostile work environment against the ABC Board (Count V); Valencia

Aaron–retaliation against the ABC Board (Count VI); Valencia Aaron– 42 U.S.C. § 1983 equal

protection and 42 U.S.C. § 1981, under § 1983, claims against Jeff Rogers, Stan Goolsby,

Kenneth Davis (Count VII); Valencia Aaron–§ 1981, under § 1983, retaliation claim against

Rogers, Stan Goolsby, and Kenneth Davis (Count VIII); Stacy D. Taylor–Title VII race

discrimination and hostile work environment against the ABC Board (Count IX); Stacy D.

Taylor–retaliation against the ABC Board (Count X); Stacy D. Taylor– 42 U.S.C. § 1983 equal

protection and 42 U.S.C. § 1981, under § 1983, claims against Jeff Rogers, Stan Goolsby, Jean

Turner, and Kenneth Davis (Count XI); and Stacy D. Taylor–§ 1981, under § 1983, retaliation

claim against Rogers, Jean Taylor, and Stan Goolsby (Count XII).

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED in part and

DENIED in part.

## II.  MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*,

467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5

F.3d 1399, 1402 (11th Cir. 1993).   In analyzing the sufficiency of pleading, the court is guided

by a two-prong approach: one, the court is not bound to accept conclusory statements of the

elements of a cause of action and, two, where there are well-pleaded factual allegations, a court

---

[1] Although identified in this Count, Mark Hatfield has not been named as a Defendant in
the case.

should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* _ U.S. _, 129 S.Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id.* (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III.  FACTS

There are two sources of fact relevant to the resolution of the pending Motion to Dismiss. One is the facts as they are alleged in the complaint. The second is the determination of the Alabama State Personnel Board Administrative Law Judge, attached as an exhibit to the motion, which will serve as the basis for the Defendants' preclusion defense.

#### 1. Second Amended Complaint

The allegations of the Plaintiffs' twenty-nine page Second Amended Complaint are summarized as follows:

Kesia Perry ("Perry"), an African-American female, was hired on August 1, 2007 as an ASA II for the ABC Board. While working this position, Perry received excellent performance reviews, but received no raises because of a raise freeze. Early in 2010, Perry asked to be cross-trained as a divisional operation specialist so that she could replace her soon-to-retire supervisor. After she asked about being cross-trained for another position, Chief Rogers ("Rogers")

requested another ASA II slot.  Summer Childress ("Childress"), a white female who was

Rogers' sister-in-law, was hired for the new ASA II spot.  Perry learned from publically available

online information that Childress was started at the top pay range for an ASA II which meant that

she was earning nearly twice as much per pay period than Perry was.  Accordingly, Perry voiced

a complaint with Sam Goolsby ("Goolsby") in Human Resources and with Rogers about this pay

discrepancy.

 Instead of investigating the discrepancy, Perry was written up for being disruptive and for

misuse of a state-owned computer.  After this incident, some of Perry's job duties were given to

Childress.  Furthermore, Childress was cross-trained for the divisional operation specialist

position and ultimately hired into the division operation specialist position which Perry had

previously inquired about.  After losing the job to Childress, Perry was involuntarily transferred

to District 10 by Rogers.  Perry was also told not to work with Andy Lard, an agent whom she

was dating.   Ultimately, Lard was terminated and arrested, and Perry became anxious because of

the ABC agents that were constantly watching her.  Due to the stress, Perry was encouraged to

take family and medical leave by her physician in November of 2010.

 When Perry returned from leave, she was assigned to work with Goolsby who had been

involved with her complaint about pay discrimination.  As Perry had to work more with Goolsby,

she told him that he was not trustworthy because he let Rogers and others use racial epithets.

Also at this time, Mac Gibson became the new Commissioner of the ABC Board.  He scheduled

a meeting with Perry in which he advised against suing the state.

 Before December 16, 2010, Plaintiff Valencia Aaron ("Aaron"), an African-American

female, was one of only two African-American female ABC agents out of about 60-80 agents.

The second African-American female was hired on the same day as Aaron's first State Personnel Board hearing concerning workplace racial discrimination.

Aaron was hired on December 29, 2005, as an ABC Enforcement Agent and underwent the normal probationary period.  Afterwards her probationary period was extended for her to complete APOSTC training.  Despite receiving high performance marks, she had her probationary period extended yet again in order for her supervisors to continue monitoring her. Aaron witnessed no other sort of extended probationary period for any white male agents.

Aaron, prior to starting at ABC and during the time she was employed there, received extensive training: nine years with the Department of Corrections in which she acted as a sergeant performing supervisory and administrative work; member of the Air National Guard since 2000 in which she performed administrative tasks; Bachelor's degree in Criminal Justice from Faulkner University; Associate's degree in Psychology from Troy University; Associate degree in Armament Systems from the Community College of the Air Force; and APOST certification.  Accordingly, Aaron was added to the sergeant registry which is used to determine promotions.  Since being added to the register, Aaron has not seen any sergeant position openings posted.  She has not been contacted or interviewed for any sergeant position.  However, in June of 2010, James Roberts, a white male with less seniority, was promoted to sergeant to fill a newly created position.  Therefore, Aaron filed a charge with Equal Employment Opportunity Commission on August 9, 2010 and a complaint with the State Personnel Department on August 10, 2010.  Shortly after this, she took FMLA leave for knee surgery.

During her leave, her work evaluation was left on her desk and she was not notified of its completion.  The work evaluation was markedly downgraded from the previous year and she was

not given proper warning per State Personnel Rules.  Moreover, she could not contest the findings since she was out on FMLA leave.

Once she returned from knee surgery, she was given work assignments which required extensive standing.  She had volunteered for this duty previously, but it was difficult because of her knee condition to continue it post-surgery.  No white male agents had to perform this same duty.

Furthermore, after her State Personnel Hearing, Kenneth Davis ("Davis") instituted new rules for District 10, Aaron's district, which he used to target Aaron and the minority agents that had testified on Aaron's behalf–Steve McKitt and Manny Orozco.  On a particular occasion in January 2011, Davis held a meeting at which Aaron spoke out about the racial discrimination present at her district, and was subsequently punished by Davis and Rogers for this complaint.

Aaron also witnessed the widespread and systematic surveillance of African-American agents by ABC's officers.  She also witnessed the favorable treatment that white agents were given by Rogers.

Plaintiff Stacy Taylor ("Taylor"), an African-American male, was an agent for the ABC Board from January 19, 2007 to January 29, 2010, at which time he was constructively discharged.  Taylor received only positive comments during his work evaluations, yet in 2008 a GPS was surreptitiously added to his state car.  About the same time, Steve McKitt ("McKitt"), another African-American agent, had a GPS attached to his car.

Taylor was aware that Rogers often used racial epithets, but he also learned from his co-workers that Rogers did not like African-American men being romantically involved with white women.  This was troublesome for Taylor, who had a white girlfriend at the time.  Taylor was

suspended for two days because he did not report an argument between his girlfriend and ex-wife. His ex-wife started the argument, and he did not see why he should report it. He was told that his failure to report this incident was a violation of ABC Enforcement Agent's Manual 2-15, but Taylor's reading of the manual would not encompass such an incident.

In 2009, Taylor and McKitt were assigned to work warehouse duty which was an undesirable position for the agents. It consists of watching prisoners on work release to make sure that those prisoners did not steal the alcohol. The working conditions were hot and dirty as well. He complained to his supervisor, Lt. Hill, who explained that Taylor and McKitt made fewer cases than other agents and this was their new assignment. Taylor presented evidence to Hill that there were white agents that made fewer cases than McKitt and Taylor and they did not work warehouse duty. Hill called central office about this and was told by Rogers to continue the assignment. Subsequently, Hill was removed from his position and replaced with Jean Turner ("Turner").

Once Turner took over as Taylor's supervisor, Taylor was punished multiple times. He was given a warning for a small dent in his state car which was so difficult to see that Taylor had to point it out to Turner. Later, on December 8, 2009, he was placed on step one of the disciplinary process for failure to make enough cases in 2008. Lastly, Rogers, at Turner's request, ordered a disciplinary transfer to Dothan for Taylor. Taylor knew that individuals were sent to Dothan to be forced into quitting. Between that knowledge and the fact that Taylor was denied economic hardship relief to afford the move to Dothan, Taylor was forced to resign. He later tried to rescind his resignation, but Rogers would not meet with him to do that. Accordingly, the termination became final.

2. <u>Facts as Derived from Administrative Law Judge's Determination</u>

On December 14, 2010, Perry had her case heard before an Administrative Law Judge ("ALJ") for the Alabama State Personnel Board.  Likewise, on December 16, 2010, Aaron had her case heard before the same ALJ for the Alabama State Personnel Board.  In both hearings, the ALJ determined whether or not ABC had violated *Alabama Administrative Code* 760-X-4-.01 which prohibits "[d]iscrimination against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action, because of race, sex, national origin, age, handicap, or any other nonmerit facts."

Upon consideration of the same facts alleged in this case as well as other relevant exhibits, witness statements, and testimony, the ALJ for the Alabama State Personnel Board conducted factfinding concerning Perry's claims and Aaron's claims.  Concerning Perry's claims the ALJ found that: "Perry failed to offer evidence she suffered an adverse employment action by ABC;" "Perry failed to offer evidence of a similarly situated, but disparately treated, employee;" "[e]ven had Perry proved an adverse employment action or a similarly situated individual, ABC offered legitimate business reasons for not cross-training Perry, transferring Perry and hiring Childers [sic] at a higher pay rate;" and that there was "[n]o retaliation." (Doc. #19.1 at 16, 19, 22, 25).  Concerning Aaron's claims the ALJ found that: "Aaron failed to offer evidence of a similarly situated, but disparately treated, employee;" "[e]ven had Aaron offered a similarly situated individual, ABC offered legitimate business reasons for not promoting Aaron;" and that there was "[n]o retaliation." (Doc. #19.3 at 13, 15, 19).

Ultimately, the ALJ determined that both Perry and Aaron failed to establish claims of discrimination and retaliation on the part of Defendant ABC.

## IV.  DISCUSSION

### A. The Title VII Complaint Standard

"Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002), it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination. *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008).   One method available to a plaintiff is to allege facts showing that a similarly-situated person outside her racial classification was treated differently.  *Henderson v. JP Morgan Chase Bank, N.A.*, No. 10-13286, 2011 WL 3362682 (11th Cir. Aug. 4, 2011). Importantly, Rule 8 does not require a likelihood of success on the merits, and accordingly "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz*, 534 U.S. at 515.

### B. Claims Against Defendant ABC Board

#### 1. Perry's Claims

As to Kesia Perry's claims, the Defendants contend that the only specific example of alleged discrimination involved a pay disparity between Perry's pay and Childress's pay.  The Defendants argue that Perry's co-workers' pay rates are publicly available, but Perry only identifies a single comparator.   The Defendants also state that Perry does not compare her qualifications to those of Childress.   The Defendants contend that several plausible explanations for why Childress was paid more are apparent.

Perry's theory as alleged in the Second Amended Complaint is that a new hire was made and the person hired, who was outside of Perry's racial classification, was hired at a higher rate,

9

even though new employees were supposed to begin at the lowest amount in the pay range.  The court agrees with the Plaintiffs that Perry has sufficiently alleged comparator evidence.  The Defendants counter by pointing to state policy, arguing that the Personnel Director can approve the hiring of a new employee at a rate above the minimum.

The Defendants' arguments with respect to the reasons for the difference are arguments which, when supported with evidence, may meet their *McDonnell Douglas* burden-shifting burden, but do not demonstrate that Perry has failed to meet the Rule 8 standard.

As to a hostile environment claim, the Defendants state that Perry has not alleged any examples of discriminatory intimidation, ridicule or insult, citing  *Miller v. Kenworth of Dothan, Inc.*, 277 F3d 1269, 1275 (11th Cir. 2002).   Perry has alleged surveillance directed only at African-American employees, and has alleged awareness of the use of racial epithets.  The court does note that Defendants cite *Penn v. USF Holland, Inc.*, 770 F. Supp.2d 1211, 1239 (N.D. Ala. 2010), and *Kelly v. Free*, No. 2:07-cv-610-WHA, 2008 WL 2206182, at *7 (M.D. Ala. May 23, 2008), for the propositions that occasional surveillance and surveillance unknown to the plaintiff are not sufficient to constitute an adverse employment action.  However, both of these cases are easily distinguished from the Plaintiffs' allegations since the Plaintiffs allege that the surveillance complained of was systematically targeting African-Americans and creating a hostile environment for those individuals.  Accordingly, the court cannot agree that Perry has failed to allege intimidation, ridicule, or insult.

As to retaliation, the Defendants contend that Perry's only allegation of retaliation arises from the Defendants' action concerning her romantic involvement with ABC Agent Lard.  Furthermore, concerning Perry's transfer, the Defendants cite *Braswell v. Allen* to explain that

10

transfers to different offices are not actionable in the absence of "significantly longer commutes, loss of seniority status [or] loss of opportunity to receive a pay raise or promotion." 586 F. Supp.2d 1297, 1309 (M.D. Ala. 2008).

Contrary to the Defendants' assertions, Perry has alleged that she was punished for voicing an internal complaint concerning Childress's significantly higher starting salary. Furthermore, Perry alleges that the move from the Central Office to District 10 was sure to resort in less promotion opportunities.  In support of this contention, Perry explains that the previous holder of the position she was to take, Lee Moore, was also a minority and the reason that Moore left was because she was trapped at ASA I and could never get promoted beyond that.  In countering this point, the Defendants' reliance on *Braswell* is misplaced, because the *Braswell* court dealt with the transfer issue on a motion for summary judgment.  The *Braswell* court explained that "[a]lthough Plaintiffs allege that the transfers resulted in significantly longer commutes, loss of seniority status and loss of opportunity to receive a pay raise or promotion, Plaintiffs did not present the Court with any such evidence." *Id.* To grant the Defendants' present motion to dismiss would deprive the Plaintiffs of the opportunity to obtain further discovery to prove their allegations.  This is an opportunity the *Braswell* plaintiff was allowed, and Perry should be allowed this as well.

To reiterate, the Defendants' responses to Perry's allegations may later serve to meet their *McDonnell Douglas* burden-shifting burden, but do not demonstrate that Perry has failed to meet the Rule 8 and *Swierkiewicz* standards.

## 2. Aaron's Claims

As to Valencia Aaron's racial discrimination claim, the Defendants contend that the only

specific example alleged by Aaron is the selection of Jason Roberts, a white male, for a newly created sergeant position.  The Defendants also contend that Aaron did not explain how her qualifications were superior to Roberts specifically in the area of police training.

Aaron's theory as alleged in the Second Amended Complaint is that Roberts was given the newly created sergeant position despite Aaron's extensive qualifications.  She further alleges that Roberts had less seniority, less education, and no supervisory experience but was still selected.  Aaron also contends that during her initial training with ABC that she was forced to undergo longer probation than her white counterparts despite receiving high performance marks.

The Defendants contend that none of Aaron's education or qualifications matter for the particular job and that she has not demonstrated that her qualifications are superior to Roberts's. Furthermore, the Defendants allege that there are reasons for her longer probation, such as her need to complete APOSTC training before becoming an agent.  While the court notes that Defendants' contentions, if proved, may serve to shift the burden back to the Plaintiffs under *McDonald Douglas*, these contentions are inappropriate to consider during a 12(b)(6) Motion to Dismiss.  The court agrees with the Plaintiffs that the complaint meets the appropriate Rule 8 standards for Aaron's discrimination claim.

The Defendants do not address the hostile work environment portion of the Aaron's discrimination claim, but the court also finds that Aaron's hostile work environment claim meets Rule 8's requirement.  Aaron has specifically alleged that she saw other African-American agents being targeted by surveillance, that she was targeted by surveillance, that Davis enforced the rules and procedures much more harshly against minority agents, that Davis created a set of rules just for District 10 and enforced them against Aaron, McKitt, and Orozco more stringently, and

12

that Aaron witnessed other discriminatory acts that caused her to feel that her work environment was racially hostile.  The court finds these factual allegations to be sufficient enough to meet Rule 8.

The Defendants also contend that Aaron's only alleged act of retaliation concerned her write-up after accusing her supervisor of racism, which is not retaliation.  Furthermore, the Defendants maintain that her being unable to review her performance review while she was on sick leave is not retaliation since her marks were satisfactory.  Lastly, the Defendants do not contest that Aaron was under surveillance, but that she has not demonstrated that she was or that such surveillance led to any adverse employment actions.

Aaron's complaint alleges that she was subject to punishment after lodging an internal complaint about her supervisor's racism.  Furthermore, Aaron also alleges that she was subject to work assignments that forced her to stand for long periods of time after she returned from her knee surgery.  She alleges that this painful work assignment was to punish her for her complaints about her supervisor's racism. Also, she alleges that new District rules were created after her first State Personnel Board hearing and that these rules were unequally enforced against her and the other minority agents that testified on her behalf at the hearing.  This court finds that these allegations are sufficient for Rule 8 standards.

Again, the Defendants' proposed explanations for these incidents could serve to shift the burden back to the Plaintiffs under the *McDonald Douglas* framework, but do not play into the Rule 8 analysis.

### 3. Taylor's Claims

As to Stacy Taylor's racial discrimination claim, the Defendants contend that Taylor has

13

not made one single allegation to support his claim.  The Defendants make note of Taylor's claim that other white officers made fewer cases than he did and were not forced into less desirable positions.  However, the Defendants explain this away by saying that he did not provide the names, ranks, or positions of any of the white officers or any possible counseling that those white agents received for their performance.

Taylor's theory as alleged in the Second Amended Complaint is that he was targeted by Rogers for negative treatment not only because of his race but also because he was dating a white woman.  Taylor alleges that he was told by another agent that Rogers did not like a black man dating a white woman.  Taylor claims that he was punished for not reporting an argument between his ex-wife and his current girlfriend to Rogers even though the Enforcement Agent's Manual does not contemplate such circumstances.  Furthermore, Taylor alleges that he and another African-American agent were assigned to work more warehouse duty, which is an undesirable working condition, than white agents.  He was told that it was because he made fewer cases, but Taylor alleges that he investigated and found that white agents in his district made fewer cases than him and did not work warehouse duty.

Although the Defendants contend that Taylor alleges no instances of racial discrimination, the court does not agree.  The instances alleged by Taylor are sufficient to meet the Rule 8 requirements, and the Defendants' contentions are more appropriate for a motion for summary judgment than a motion to dismiss.

The Defendants do not address Taylor's hostile workplace claim but Taylor alleges that he knew Chief Rogers did not like African-American men dating white women, that he had heard racial epithets being used by the Defendants, and that there was systematic surveillance targeted

exclusively at African-Americans. Given those allegations, this court finds that Taylor has made out an allegation of hostile workplace under Rule 8.

The Defendant also contends that Taylor has provided only one instance of complaining about mistreatment based on his race. The Defendant further argues that the complaint is not clear about whether or not the retaliatory transfer from Montgomery to Dothan took place after his complaint to his supervisor, Hill.

On the contrary, the Second Amended Complaint sets out the following facts: in late 2009 Taylor and McKitt were assigned warehouse duty more often than white agents; Taylor informed his supervisor, Lt. Hill, that he thought the warehouse assignment was racially motivated; Hill told Taylor that the assignment was given to Taylor and McKitt since those two didn't make enough cases; Taylor obtained a list of cases made and showed Hill that some white agents made fewer cases but got no warehouse duty; Hill called the central office and was told by Rogers that the assignment still stood for Taylor and McKitt; Hill was reassigned from District 10 shortly after his call to Rogers because he stood up for Taylor and McKitt; Hill's replacement, Turner, thereafter proceeded to harass Taylor; and, ultimately, Turner requested Taylor's disciplinary transfer to Dothan. Accordingly, this court does not agree with the Defendants' contention that the Second Amended Complaint is unclear about the timing of Taylor's transfer relative to the complaint he made to Hill about the warehouse assignment. Furthermore, this court finds that Taylor has sufficiently alleged a claim for retaliation against ABC pursuant to Rule 8.

     C. <u>Claims Against Jeff Rogers, Stan Goolsby, Kenneth Davis, and Jean Turner</u>

     1. <u>Perry and Aaron's Claims</u>

15

The Defendants contend that the racial discrimination and retaliation claims against the individual employees, Rogers, Goolsby, and Davis, as asserted in Counts III, IV, VII, and VIII, are precluded by a prior adjudication by the State Personnel Board based on the same factual allegations.  This court notes that the Defendant's contention is appropriately raised under a Rule 12(b)(6) motion and that the court is allowed to consider the state ALJ's opinion because it is a matter of public record. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (finding that matters of public record can be taken into account during a motion to dismiss); *Delta Health Group, Inc. v. U.S. Dept. of Health and Human Services*, 459 F. Supp.2d 1207, 1209 (N.D.Fla. 2006) (citing *Bryant v. Avado Brands, Inc*.).

In support of their preclusion argument, the Defendants cite *University of Tennessee v. Elliott* for the position that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799 (1986) (quoting *United States v Utah Construction & Mining Co.*, 384 U.S. 394, at 422 (1966)).  The *Elliott* Court made it clear that issue preclusion may apply to § 1983 claims under federal law but would not apply to Title VII claims. 478 U.S. at 796.  The Eleventh Circuit clarified this issue by explaining that the *Elliott* decision's enforcement of state law issue preclusion would not extend to state law claim preclusion in the context of § 1983.  *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1065 (11th Cir. 1987).  Therefore, under the framework created by the Supreme Court and the Eleventh Circuit, all Title VII claims can be retried de novo, § 1983 claims in federal court are subject to issue preclusion from state administrative agencies, and § 1983 claims in federal court are not

16

subject to claim preclusion from state administrative agencies.

In Alabama, issue preclusion applies to issues raised in state administrative agency proceedings when: "(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision." *Mercy Medical v. Gray*, 864 So. 2d 354, 358 (Ala. Civ. App. 2002) (quoting *Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999)).

Concerning the first prong of the issue preclusion test, the Defendant urges the court to consider the individual employees to be in privity with ABC–which was the actual defendant during the State Personnel Board's adjudication.  In support of its contention, the Defendants cite *Thompson v. SouthTrust Bank*, for the proposition that employees are considered in privity with their employer with regard to the effect of a prior adjudication.  961 So. 2d 879, 885 (Ala. Civ. App. 2007).  However, the *Thompson* case dealt with the issue of res judicata, or claim preclusion, and not issue preclusion.  In the realm of issue preclusion, the Alabama Supreme Court has explained that "'[p]rivity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Jim Parker Bldg. Co., Inc. V. G & S Glass & Supply Co., Inc.*, No. 1090784, 2011 WL 835063, at *5 (Ala. March 11, 2011) (quoting *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir.2004)). Considering the mutuality of interests inherent in the employee employer relationship and the fact that the Plaintiffs are seeking redress for acts committed by the Defendant employees while

17

they were acting in the scope of their employment with ABC, this court finds that the Defendant employees are in privity with the Defendant employer, ABC.  Both Perry and Aaron were the named party in their respective State Personnel Board Hearings.

Concerning the identity of issues, the State Personnel Board dealt with the issues of alleged racial discrimination and retaliation against Perry and Aaron separately.  Both of these issues are the same that make up Counts III, IV, VII, and VIII, and therefore the second prong of the issue preclusion test been met.

Concerning the third prong of the issue preclusion test, the adequacy of opportunity to litigate, both Aaron and Perry were represented by counsel at the hearing.  Furthermore, both were allowed to present evidentiary exhibits and were allowed to have witnesses testify at the hearing.  Moreover, the ALJ did not simply provide a conclusory opinion as to the claims levied by Aaron and Perry, but instead the ALJ wrote lengthy memorandum opinions explaining both her factfindings and appropriate legal analysis.  Concerning Perry's claim, the ALJ analyzed Perry's accusations against Goolsby and Rogers, and concerning Aaron's claim, the ALJ analyzed Aaron's accusations against Goolsby, Rogers, and Davis.  Therefore, this court finds that both Perry and Aaron have had an adequate opportunity to litigate the issues during the administrative hearing.

After reviewing the ALJ's opinion, this court finds that the issues to be estopped were actually litigated during the hearing and accordingly that the fourth prong of the issue preclusion test has been met.  The ALJ's opinion contains findings of fact about the same facts that the Plaintiffs present in the Second Amended Complaint.  The ALJ relied on federal law precedent to determine that no discrimination or retaliation took place for either Aaron or Perry.  Furthermore,

the ALJ found non-pretextual reasons for the Defendants' actions in addition to no

discrimination or retaliation.  Therefore, this court finds that the issues were actually litigated.

Since the issues of racial discrimination and retaliation were the crux of the claim decided

by the ALJ, this court finds that those issues were necessarily decided in the course of the ALJ's

decision.  There is no other way that the ALJ could have determined workplace discrimination

and retaliation without looking at the Plaintiffs contentions that speak exactly to that.  Therefore,

the fifth prong of the issue preclusion test has been met.

Accordingly, this court finds that all five prongs of the issue preclusion test have been

met by the Defendants.  This means that Plaintiffs Aaron and Perry are precluded from litigating

the issue of whether the individual Defendant employees' conduct amounted to discrimination or

retaliation.  Such a finding is required by the Court's decision in *Elliott*.

Since Aaron and Perry are precluded from litigating the issue of racial discrimination or

retaliation by Rogers, Goolsby, or Davis, then the court must dismiss Counts III, IV, VII, and

VIII.

### 2. Taylor's Claims

To begin, the court notes that Taylor did not go through the Alabama State Personnel

Board process and is not subject to the same issue preclusion that Aaron and Perry are.

As to Taylor's racial discrimination claim against Rogers, Turner, Goolsby, and Davis,

the Defendants contend that Taylor has not pled any facts that would plausibly demonstrate that

any of these individuals has performed any action that would constitute an adverse employment

action.  In addition to these contentions, the court notes that Count XI names all four Defendant

employees, but in the subsequent paragraphs for Count XI, Davis is omitted from the specific

allegation of racial discrimination.

Taylor's theory of discrimination against the individual Defendants largely echoes the theory against ABC as the employer: Defendant Rogers disliked Taylor's relationship with a white woman, Rogers assigned jobs on the basis of racial preference, Rogers authorized surveillance of black agents exclusively, Rogers refused to speak to Taylor after he resigned, Rogers manipulated the sergeant's register to prevent African-Americans from receiving promotions, Turner treated Taylor inappropriately as his supervisor, and Turner transferred Taylor to Dothan to retaliate against him for lodging a complaint.  However, within the section of the Second Amended Complaint titled "**PLAINTIFF STACY TAYLOR**," Defendant Davis is not mentioned once. (Doc. # 6)  Furthermore, Defendant Goolsby is mentioned in only four paragraphs.  (Doc. #6 ¶169, ¶171, ¶173,  ¶174).  In two of those paragraphs, Goolsby simply informs Taylor that his resignation has been accepted since Taylor never spoke with Rogers about rescinding his resignation.  *Id.* at ¶169, ¶171.  The other two paragraphs explain how Goolsby and another individual attempted to hire a black employee and were overridden by Rogers so that he could hire a white female.  *Id.* at ¶173, ¶174.

The court finds that the Defendants were incorrect in arguing that Taylor has not pled any instances of misconduct by the individual Defendants with respect to Rogers and Turner. However, the court finds that the Plaintiffs have not stated any facts upon which relief can be granted with respect to Davis, who was omitted from the relevant complaint sections, and Goolsby, who arguably attempted to hire a minority despite his supervisor's disagreement. Without any further allegations, the claims against Davis and Goolsby in Count XI are dismissed without prejudice.

The retaliation claim, Count XII, is contested by the Defendants in much the same way as Count XI.  The Defendants claim that there are no facts pled that demonstrate retaliatory actions by any of the Defendant employees.  This contention is due to be handled much the same way as Count XI.  The facts that Taylor has pled do implicate Rogers and Turner in a scheme to retaliate against Taylor for his complaint about the warehouse work assignment.  However, as discussed above, Goolsby is barely mentioned in the factual allegations of the Second Amended Complaint concerning Taylor, and there are no factual allegations pled that would constitute retaliation on the part of Goolsby.  Given the facts alleged by Taylor, the claim against Goolsby is to be dismissed without prejudice and the claims against Rogers and Turner are due to go forward.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Motion to Dismiss is Granted to the following extent:

     a. Counts III, IV, VII, and VIII are dismissed with prejudice.

     b. Count XI is dismissed without prejudice with respect to Davis and Goolsby only.

     c. Count XII is dismissed without prejudice with respect to Goolsby only.

2. The Defendants' Motion to Dismiss is DENIED in all other respects.

3. The case will proceed on Count I, Count II, Count V, Count VI, Count IX, and Count X against the ABC Board; Count XI against Rogers and Turner only, and Count  XII against Rogers and Turner only.

4. Stan Goolsby and Lt. Kenneth Davis are DISMISSED as party Defendants.

Done this 23rd day of September, 2011.

_/s/ W. Harold Albritton_
W. HAROLD ALBRITTON
UNITED STATES DISTRICT JUDGE