IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KESIA J. PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:11-CV-464-WKW |
| | ) | [WO] |
| ALABAMA ALCOHOLIC | ) | |
| BEVERAGE CONTROL | ) | |
| BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is before the court on the mandate of the Eleventh Circuit Court of Appeals.  On appeal from summary judgment entered in favor of the employer on all federal discrimination claims brought by former employees, including Kesia J. Perry ("Perry"), the Eleventh Circuit affirmed in part and vacated and remanded in part.  One plaintiff (Perry), one defendant (the Alabama Alcoholic Beverage Control Board), and one claim (Title VII retaliation) remain.   The Eleventh Circuit's judgment has issued as mandate; however, the ABC Board has filed a motion insisting that the mandate does not constrain this court because Perry did not plead the Title VII retaliation claim in the controlling complaint or argue the theory in the district court.  The Alabama Alcoholic Beverage Control Board ("ABC Board") also

moves for summary judgment on the Title VII claim, asserting that this claim "was never a part of this lawsuit." (Doc. # 185, at 39.) Alternatively, the ABC Board contends that, if this court permits the claim to go forward, then it is entitled to discovery. Perry, who now is proceeding *pro se*, filed a response in opposition. For the reasons that follow, the motion is due to be denied.

## I. BACKGROUND

It is helpful to begin by sketching briefly the litigation (and lack thereof) in the district court surrounding the Title VII retaliation claim that the Eleventh Circuit has held survives summary judgment. The claim is that the ABC Board retaliated against Perry for filing this lawsuit by promptly reassigning her a new supervisor, Andy Knight, who subjected her work to heightened scrutiny. A Title VII retaliation claim predicated on Knight's alleged retaliatory supervision of Perry is not in the operative second amended complaint for the obvious reason that his supervision of Perry post-dates the amended pleading's filing and, thus, had not yet occurred. While the operative complaint does set forth a Title VII retaliation claim, that claim does not allege that the filing of this lawsuit is the protected activity for which Perry suffered adverse action. At no time did Perry file a motion in the district court to amend the second amended complaint to add a Title VII retaliation claim based upon Knight's alleged post-lawsuit retaliatory conduct, as this circuit generally requires. *See Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) (holding that a Title VII retaliation claim was not properly before the court because, although the plaintiff

"had not been fired when he filed his complaint, [the plaintiff] never amended his complaint to include a claim of retaliation based on his termination").

Notwithstanding the nonexistence of the Title VII retaliation claim in Perry's pleadings, evidence to support it is in the summary judgment record. During the discovery proceedings, Knight was deposed. Topics of questioning at his deposition included his supervision of Perry, his undisputed contemporaneous knowledge of Perry's lawsuit, his superior's implied directive to "get rid of" Perry, and his superior's ensuing praise when Knight fulfilled that directive. (*See* Doc. # 102-19; Doc. # 121-10.) By affidavit and at her deposition, Perry also reiterated the chronology of Knight's supervision over her. (Doc. # 122-1, at 17–18 (Pl.'s Aff.); Doc. # 121-1 (Pl.'s Dep.).) Perry testified that she believed that the reassignment of Knight as her supervisor and the discipline he doled out (*e.g.*, a counseling form) were retaliatory. (Doc. # 121, at 81, 85.) Moreover, the ABC Board submitted excerpts of Knight's deposition in support of its motion for summary judgment, and those excerpts focused on the particulars of Knight's supervision of Perry.[1] (*See* Doc. # 102-19, at 1–38.)

The parties' summary judgment briefs also included factual recitations of Knight's post-suit supervision of Perry. In particular, the ABC Board acknowledged that Perry's lawsuit was a protected activity (Doc. # 104, at 19–20, 51) and noted

---

[1] In its current briefing, the ABC Board stresses that the inclusion of these facts was for context only.

3

(and then rebutted) the testimony of Knight that "he believed he was put in place to essentially retaliate against Plaintiff" (Doc. # 104, at 24).  In her brief opposing summary judgment, Perry also highlighted the circumstances of her job under Knight's supervision.  (Doc. # 120, at 27–31.)  But Perry did not categorize the evidence of Knight's close supervision that followed on the heels of this lawsuit as a discrete act of retaliation that supported an independent Title VII retaliation claim.[2] Perry instead framed the evidence around a retaliatory hostile work environment claim (Doc. # 120, at 27–31, 47, 52), a claim that, ironically for the ABC Board, the district court rejected because Perry had not "move[d] to amend to add such claim." (Doc. # 156, at 52–53.)  The district court's opinion on summary judgment also does not analyze a separate Title VII retaliation claim that Knight's post-lawsuit supervision of Perry was an act in retaliation for filing a lawsuit, and understandably so.[3]

On appeal of the adverse summary judgment ruling, for the first time, Perry's attorney expressly raised a Title VII retaliation claim premised on Knight's post-lawsuit supervision.[4]  Perry explained that, in July 2011, after having learned of

---

[2] Other actions, such as Perry's suspension in 2012, also fell outside of the temporal scope of Perry's pleadings, but were discussed and argued in the summary judgment briefing, without mention of their omission in the operative complaint.

[3] The undersigned was not the trial judge but received this case on reassignment after the mandate issued.

[4] Perry retained new counsel for her appeal.  After remand, counsel was permitted to withdraw.

Perry's lawsuit, Human Resources Manager (Stan Goolsby) reassigned Knight to supervise Perry and instructed him "to keep a close watch on [her] and to use progressive discipline if necessary." (Doc. # 185-1, at 10–11.) Goolsby conveyed to Knight his belief that Perry "would either hang herself or she would become so upset that she would quit." (Doc. # 185-1, at 10–11.) Formulating her claim on appeal, Perry argued that Goolsby's directives to Knight, which occurred one month after she filed her lawsuit, and the ensuing disciplinary actions Knight imposed on her supported a Title VII retaliation claim. (Doc. # 185-1, at 27–28.) The ABC Board countered that Perry's failure in the district court to raise a claim that "her placement under Andy Knight's direction constituted an act of retaliation" amounted to a waiver, but that, alternatively, Knight's supervision of Perry was not an adverse employment action. *Perry*, No. 13-14897-E (11th Cir. Feb. 12, 2014) (Appellee's Br., at 55–56).

Opining that "Knight's close supervision of [Perry] was an act of retaliation," the Eleventh Circuit held that "a genuine issue of material fact exist[ed] as to whether the ABC [Board] retaliated against Perry after she filed her lawsuit." (Doc. # 174, at 21, 25.) It reasoned that, "[b]ased on the close temporal proximity between the filing of Perry's complaint and the subsequent disciplinary activity, a reasonable jury could conclude that Perry would not have been closely watched and then disciplined by Knight in the absence of her protected activity." (Doc. # 174, at 25.) The Eleventh Circuit described the "disciplinary activity" as embracing (1) Knight's

5

counseling of Perry concerning her "punctuality, cooperation with coworkers, and compliance with the ABC Board's rules," (2) a written reprimand, and (3) a suspension. (Doc. # 174, at 24–25.) Accordingly, the Eleventh Circuit "reverse[d] and remand[ed] with respect to Perry's retaliation claim." (Doc. # 174, at 25.) The decision did not mention the ABC Board's waiver argument.

After the Eleventh Circuit's reversal, the ABC Board petitioned the Eleventh Circuit for rehearing or rehearing *en banc*. The ABC Board argued that, because Perry did not amend her complaint to include discrete acts of retaliation occurring after she filed her lawsuit, a Title VII claim premised on alleged post-lawsuit retaliation was outside the scope of Perry's litigation. The ABC Board emphasized that "[t]he panel decision predicated the entire surviving retaliation claim on factual events that occurred *after* Perry filed this lawsuit." *Perry v. Ala. Alcoholic Beverage Control Board*, No. 13-14897-E (11th Cir. Oct. 20, 2015) (Pet. for Reh'g). The Eleventh Circuit summarily denied the petition for rehearing and entered the judgment as the mandate. The ABC Board has filed the present motion for relief from the mandate and for summary judgment on the remanded claim or, alternatively, for leave to conduct additional discovery.

## II. DISCUSSION

Upon receipt of the mandate, the district court "may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th

Cir. 1985); *see also Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1271 (11th Cir. 2015) (accord).  The district court must "implement both the letter and the spirit of the mandate taking into account the appellate court's opinion, and the circumstances it embraces." *Piambino*, 757 F.2d at 1119 (internal citations omitted). "Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied." *Id.*  Hence, the mandate rule "ban[s] courts from revisiting matters decided expressly or by necessary implication in an earlier appeal of the same case." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1270–71 (11th Cir. 2009).

Relying on a narrow exception that relieves a district court from complying with a mandate where the decision is "clearly erroneous and would work manifest injustice," *United States v. Amedeo*, 487 F.3d 823, 830 (11th Cir. 2007) (citation omitted), the ABC Board insists that the mandate rule does not constrain this court. Unfortunately for the ABC Board, a close look at the mandate's implicit ruling (Part A below) juxtaposed with the exception's narrow application (Part B below) demonstrates that this court cannot make the requested exception to the mandate rule.

A.    **The Mandate's Implicit Ruling**

To begin, it would be presumptuous for this court to conclude that the *Perry* panel was unaware of the failure of the operative complaint to include a Title VII

retaliation claim arising from Knight's post-lawsuit supervision of Perry and the lack of tightened argument in the district court as to the factual and legal contours of this unpleaded claim. More than once, the Eleventh Circuit silently has excused a claim's procedural shortcomings in favor of a merits resolution. In *Campbell v. Civil Air Patrol*, 138 F. App'x 201 (11th Cir. 2005), for example, the first panel vacated judgment for the defendants on a Title VII retaliation claim, holding that the trial evidence did not sustain the defendants' affirmative defense upon which the jury verdict rested. *Id.* at 202. On remand, the district court reinstated judgment for the defendants, finding that it was powerless to grant the plaintiff relief because he had failed to make a Rule 50 motion or a new trial motion under Rule 59. *See id.* On appeal after remand, the Eleventh Circuit reversed, holding that the district court impermissibly had violated the mandate. It noted that, although the first panel did not expressly address the plaintiff's failure to file Rule 50 and Rule 59 motions, the defendant had raised the issue in the prior appeal, and, therefore, it was "necessarily decided by this Court's decision, at least implicitly." *Id.* at 205. The *Campbell* court continued: "The disposition of these issues was thus included in this Court's mandate and could not be revisited by the district court." *Id.*

In another case, which was on appeal after the district court on remand had refused to enforce the mandate's directive to permit a party's intervention as of right, the Eleventh Circuit explained:

> Sylva's failure to file a separate pleading setting forth his claims for relief could not have justified the district court's departure from this court's decision in *Piambino I* that Sylva be accorded intervention as a matter of right.  As we have stated, the law of the case doctrine extends to every issue the reviewing court has decided, both explicitly and by necessary implication.  Although our opinion did not explicitly address the procedural requirements of Rule 24, its command that Sylva be allowed to intervene necessarily implied that any procedural noncompliance with Rule 24 on his part was inconsequential.

*Piambino*, 757 F.2d at 1119–20; *see also id.* (explaining that the mandate rule "is nothing more than a specific application of the law of the case doctrine" and that the law-of-the-case doctrine applies to issues "decided . . . by necessary implication").[5]

Here, in its appellate brief, the ABC Board was quick to point out that Perry had failed to argue before the district court that Knight's stepped-up supervision amounted to a discrete act in retaliation for Perry's filing of this lawsuit.  It also expressly brought the issue of waiver within the scope of appeal by arguing that Perry's failure amounted to a waiver.  *Perry v. Ala. Alcoholic Beverage Control Bd.*, No. 13-14897-E (11th Cir. Feb. 12, 2014) (Appellee's Br., at 55).  Yet, the panel bypassed any discussion of the claim's procedural posture and of the issue of waiver and instead proceeded directly to the merits of the Title VII retaliation claim.  By doing so, the court finds, in accordance with *Campbell* and *Piambino*, that the panel impliedly excused any procedural deficiencies in Perry's failure in the district court

---

[5] The court recognizes, as the ABC Board points out, that the defendant in *Campbell* did not rely on any of the exceptions to the mandate rule.  But *Campbell* demonstrates why the panel's silence conveys an implicit holding.  The error-and-injustice exception to the mandate rule is discussed in the next part.

to amend her complaint to include the post-suit retaliatory conduct or to argue a retaliation theory that provided the best legal fit.  Likewise, in permitting the claim to go forward, the panel implicitly rejected the ABC Board's argument that Perry had waived the claim.  *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument.").

The panel surely was cognizant of its authority to refuse to address an issue that had received no attention in the district court.  As to another of Perry's claims, the *Perry* panel applied the doctrine of waiver when it declined to consider her 2012 suspension as evidence of retaliation because she had not "raised [it] before the district court."  (Doc. # 174, at 23.)  Furthermore, if in retrospect, the *Perry* panel had had second thoughts about the wisdom of its decision, the ABC Board's petition for rehearing would have given it the opportunity to revisit its holding.  In its petition, the ABC Board underscored the Title VII retaliation claim's omission in the controlling complaint and reiterated the well-established law that precludes amendments to a complaint outside the pleadings.  However, instead of revisiting any issues, the Eleventh Circuit summarily denied the petition for rehearing.  In sum, because the ABC Board raised the procedural failings of the Title VII retaliation claim in its appellate briefing, the court finds that "the disposition of these issues was . . . included in" the mandate by necessary implication, *Campbell*, 138 F. App'x

at 205, and that the Eleventh Circuit "did not contemplate a subsequent district court resolution as to the procedural adequacy of" the claim, *Piambino*, 757 F.2d at 1121.

## B.  The Error-and-Injustice Exception to the Mandate Rule

The ABC Board argues that the Eleventh Circuit's decision—creating a new Title VII retaliation claim based upon a theory that Perry neither pleaded nor argued in the district court—is clearly erroneous and manifestly unjust because the holding ignores settled circuit precedent and is internally inconsistent.  The ABC Board's argument, although enticing, succumbs to careful examination of the exception's narrow application.  Before reaching the ABC Board's arguments, the court sets forth the principles of law governing the exception's narrow reach.

### 1.  *The Error-and-Injustice Exception:  General Principles of Law*

Courts "rarely invoke" the error-and-injustice exception to the mandate rule, "less the exception swallow the rule." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003) (discussing the "error and injustice" exception to the law-of-the-case doctrine from which the mandate rule derives).  Its application is reserved for "legal errors," but not all legal errors will suffice. *Id.* at 1369.  "[O]nly when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling." *Id.* at 1371; *Cox Enters., Inc.*, 794 F.3d at 1272 (framing the exception's inquiry as "whether the prior panel's decision was so clearly erroneous that we cannot construe it as a reasoned outcome" and describing the inquiry as "exacting").  The Fifth Circuit has explained the error-and-injustice exception this

11

way:  "Mere doubts or disagreement about the wisdom of a prior decision . . . will not suffice for this exception.  To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must be dead wrong." *Hopwood v. Texas*, 236 F.3d 256, 272–73 (5th Cir. 2000) (citation omitted).  Where there is clear legal error, the error "presents a manifest injustice where [it] would likely change the outcome of a case."  *Moulds v. Bullard*, 452 F. App'x 851, 853 (11th Cir. 2011) ("*Moulds II*").  To illustrate, the *Piambino* court rejected the exception's applicability, holding that its prior decision was "not clearly erroneous" because the motion to intervene was "timely and had merit, and [the intervenor's] failure to file a pleading in the nature of a complaint as required by Rule 24(c) was inconsequential."  757 F.2d at 1120.

Few litigants have been able to hurdle the exception's "high bar."  *Cox Enters., Inc.*, 794 F.3d at 1272.  Two illustrations from this circuit's precedent demonstrate what it takes to make the leap.  First, in *Jenkins Brick Co.*, the Eleventh Circuit held that the transferor district court's implicit ruling that venue was proper in Alabama (but more convenient in Georgia) was not binding on the transferee district court in Georgia because the ruling was clearly erroneous and would work a manifest injustice.  *See* 321 F.3d at 1370 (applying the exception in the context of the law-of-the-case doctrine).  Venue plainly was improper in the federal district court in Alabama; hence, the ruling was clearly erroneous.  The ruling also would have required the application of Alabama choice-of-law rules and likely Alabama

12

law, which would have validated a non-compete agreement that plainly was contrary to the fundamental public policy of Georgia. *See id.* at 1371–73. The choice-of-law repercussions flowing from the erroneous ruling that venue was proper in Alabama demonstrated manifest injustice.

A second illustration of the exception's applicability is found in *Moulds II.* In *Moulds II*, the district court refused to follow the first panel's mandate that reversed summary judgment on the inmate's due process claim. The first panel held that the inmate's "punishment—temporary loss of privileges and disciplinary confinement—did not constitute the deprivation of a constitutionally protected liberty interest," but then contradicted itself by concluding that the inmate's "procedural due process rights may have been violated by the disciplinary hearing that led to the imposition of that punishment." 452 F. App'x at 854. By holding that, as a threshold matter, "there was no protected liberty interest at stake," the first panel clearly erred in simultaneously declaring that the defendants deprived the inmate of a protected liberty interest. *Id.* at 855 (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (noting that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest")). Moreover, the legal error in the first panel's ruling "could [have] affect[ed] the case's outcome" because, under that ruling, the defendants could have been "found liable for violating [the inmate's] due process rights, despite the fact that they did not deprive [the inmate] of a protected liberty interest." *Id.* Hence, manifest injustice

13

was shown, and the error-and-injustice exception justified the district court's departure from the mandate.

### 2. *The ABC Board's Argument that the Panel Decision Violated Clear Precedent*

Although the ABC Board's frustration is understandable,[6] the foregoing principles demonstrate that this case does not rise to the extraordinary level necessary to find that the panel decision contains legal error that is "beyond the scope of reasonable debate," *Jenkins Brick Co.*, 321 F.3d at 1371; hence, the court need not consider whether the legal error works a manifest injustice. The court must reach this conclusion, regardless of whether it agrees with the panel's decision.

The ABC Board argues that, by permitting Perry to pursue a Title VII retaliation claim that she did not plead or argue before the district court, the Eleventh Circuit overlooked basic tenets of settled law. The ABC Board's well-reasoned brief methodically sets out principles of law upon which it seems the panel could have relied to foreclose Perry's new Title VII retaliation claim. For example, it is well-settled law in this circuit that a "court is barred from amending a plaintiff's claim," *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013), that a plaintiff cannot amend her complaint in a summary judgment brief, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012), and

---

[6] The court empathizes. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (observing that "[t]oo often our colleagues on the district courts complain that the appellate cases about which they read were not the cases argued before them" (citation omitted)).

that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by [the Eleventh Circuit]," *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citation omitted).  But the panel relied on none of these tenets.

Although these tenets are sound law, their weight diminishes when considered in the context of the mandate rule.  To the extent that the panel avoided these tenets, that avoidance does not rise to the level of legal error that is required to justify this court's repudiation of the mandate.  The principal reason is that these tenets are not mandatory or jurisdictional, but instead are permissive and help guide a circuit court's discretion.  *See, e.g., United States v. Tremble*, 933 F.2d 925, 928 (11th Cir. 1991) (Generally, "an appellate court will not consider a legal issue or theory raised for the first time on appeal.  The decision whether to consider such an argument is left to the appellate court's discretion." (citations omitted)); *Access Now*, 385 F.3d at 1332 ("[T]he notion that an appellate court will not consider issues not raised before the district court is not a jurisdictional limitation but merely a rule of practice." (citation and internal quotation marks omitted)).  Exercising its discretion, the Eleventh Circuit has permitted a litigant to pursue a new issue on appeal in limited circumstances.  *Access Now*, 385 F.3d at 1332 (recognizing its discretionary authority to depart from the general practice of refusing to consider an issue raised for the first time on appeal, such as "'where the interest of substantial justice is at stake'" or "where the proper resolution is beyond doubt'") (quoting *Wright v. Hanna*

*Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)).  Moreover, the Eleventh Circuit has expressed a greater willingness to consider a new issue on appeal when the case is at the summary judgment phase, as this case was, and not in a post-trial posture. *See Blue Martini Kendall, LLC v. Miami Dade Cty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016) (acknowledging that it has "been more likely to exercise discretionary jurisdiction over an issue not raised in the district court when . . . the appeal stems from a summary judgment ruling, not after trial, because a remand from summary judgment proceedings involves less strain on judicial resources and does not impair judicial efficiency as dramatically").

The ABC Board ably has argued, page after page, why a court would be hard-pressed to conclude that this case falls within any of the recognized circumstances. As persuasive as the ABC Board's arguments are, they cannot overcome the mandate rule.

Under the circumstances of this case, the court declines to second-guess the *Perry* panel's exercise of its discretionary authority to hear a new Title VII retaliation claim stemming from Knight's post-lawsuit supervision.  For one thing, the case came to the panel on a summary judgment ruling, not after trial.  For another thing, the record arguably contains the critical facts to support the claim, and the discovery phase covered an expansive territory of unpleaded facts.  It is conceivable that the Eleventh Circuit pictured the discovery materials as containing an image of a controversy focused on a retaliatory switch in supervisors and in supervisory styles

that was punishment for Perry's filing of this lawsuit.  It is conceivable also that the circuit implicitly concluded that the ABC Board garnered sufficient notice of the claim, even though Perry's pleadings did not embrace it forthrightly, when the parties explored its factual predicate during discovery.  Whatever its reasoning and whether this court agrees with that reasoning or not, the panel preferred substance (a merits decision) over form (rejection of an unpleaded claim), and implicitly excused Perry's failure to amend her complaint to include a Title VII retaliation premised on the retaliatory act of Knight's "close supervision."  (Doc. # 174, at 20–21.)  At bottom, the panel acted within its prerogative, as the implied ruling originated from its discretionary authority.  It cannot be said that the *Perry* panel's consideration of the unpleaded Title VII retaliation claim, though on life support, was "dead wrong," *Hopwood*, 236 F.3d at 272–73, and "beyond the scope of reasonable debate" so as to justify this court's deviation from the mandate rule.  *Jenkins Brick Co.*, 321 F.3d at 1371.

### 3.    *The ABC Board's Argument that the Panel Decision Rendered Irreconcilably Inconsistent Rulings*

The ABC Board also argues that the *Perry* panel's decision contains irreconcilably inconsistent conclusions of law and erroneous factual findings that contributed to the legal error.  But, in the end, these arguments falter.

To begin, the ABC Board focuses on Knight's suspension of Perry.  It contends that, on the one hand, the panel declined to categorize the suspension as an

adverse employment action because "the issue was not raised before the district court," and, alternatively, because the suspension, which occurred seven months after the filing of Perry's lawsuit, was too temporally remote to establish causation. (Doc. # 174, at 23.)  Yet, on the other hand, the panel permitted the suspension to bolster the Title VII retaliation claim arising from Knight's supervision of Perry and found the causation element met because "Goolsby placed Perry under Knight's supervision the month after she filed her lawsuit."  (Doc. # 174, at 24.)  The ABC Board argues that these rulings "are polar opposites and cannot coexist," just as occurred in *Moulds II.*  (Doc. # 185, at 35.)  The court disagrees.

As to the surviving Title VII retaliation claim, the panel did not consider the suspension as a stand-alone act of retaliation (a separate claim that it rejected as waived).  Rather, it appears that the panel considered the suspension as one of several actions demonstrating that "a reasonable employee would have found [Knight's heightened work scrutiny] materially adverse."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  The suspension plays a different role in a stand-alone Title VII retaliation claim than it does in a Title VII retaliation claim where the suspension is part of a series of actions in a scheme designed to eliminate an employee as punishment for protected activity.  *See, e.g., EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005) (finding an actionable Title VII retaliation claim where "heightened [work] scrutiny" was "part and parcel of [the employer's] larger plan" to terminate the employee for retaliatory reasons).  The *Perry* panel was

18

considering separate Title VII retaliation claims that required different proof to satisfy the adverse employment action element, which dispels the perceived inconsistency. The different nature of the two claims also explains why the panel did not use the same events to assess causation. As to the retaliation claim based upon Knight's close supervision of Perry, the panel measured the temporal span between Perry's filing of this lawsuit and the start of Knight's supervision (one month). As to the Title VII retaliation claim based solely on the suspension, the panel considered the time span between the filing of suit and the date of the suspension (seven months). For this reason also, *Moulds II* is distinguishable. There, the first panel's holding on one element of the due process claim was irreconcilable with its holding on another element of the *same cause of action*. Based on the foregoing, the inconsistencies here are not irreconcilable to the point of amounting to legal error that "is beyond the scope of reasonable debate." *Jenkins Brick Co.*, 321 F.3d at 1371.

Additionally, the ABC Board points out that, contrary to the panel's discussion, it was Goolsby, not Knight, who issued Perry a written reprimand and that, therefore, the reprimand cannot undergird the Title VII retaliation claim based on Knight's alleged increased scrutiny of Perry's work. (*See* Doc. # 174, at 24 (suggesting that Knight issued Perry a written reprimand).) Although it appears that the ABC Board is right about the factual error, the panel based the Title VII

19

retaliation claim on other disciplinary actions as well.[7]   The ABC Board, no doubt, has raised a doubt about the correctness of the ruling, but "mere doubts" are not sufficient reason for this court to disregard the mandate.  *Hopwood*, 236 F.3d at 272.

## C.   <u>Summary Judgment and Discovery</u>

The ABC Board contends that it is entitled to summary judgment on the remanded Title VII retaliation claim because the claim was "never a part of this lawsuit." (Doc. # 185, at 39.)  But that argument has been rejected, and, therefore, the ABC Board's argument fails at this juncture also.   The renewed motion for summary judgment will be denied.

Alternatively, the ABC Board requests additional discovery on the remanded Title VII retaliation claim.  The ABC Board contends that, because this claim was not pleaded, it did not fully explore the claim during discovery.   In the exercise of discretion, the court will permit limited discovery on this claim to assist in trial preparation.

## III.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)      Defendant's motion for relief from mandate (Doc. # 185) is DENIED;

---

[7] Describing the "disciplinary activity," the Eleventh Circuit pointed out that Knight had counseled Perry concerning her "punctuality, cooperation with coworkers, and compliance with the ABC Board's rules," and that Perry had received a written reprimand and a suspension (the latter two of which the circuit said were "materially adverse actions.").  (Doc. # 174, at 24–25.)

(2)     Defendant's renewed motion for summary judgment (Doc. # 185) is DENIED;

(3)     Defendant's alternative motion for discovery (Doc. # 185) is GRANTED;

(4)     This case is set for trial on the term of court commencing September 18, 2017, and the pretrial conference is set on June 29, 2017;

(5)     The parties shall file a joint report on or before **April 14, 2017**, containing their discovery plan.

DONE this 30th day of March, 2017.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE